NOT FOR PUBLICATION (Docket No. 29)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                    :
ROBERT K. VAN BLUNK,                :
                                    :
            Plaintiff,              :    Civil No. 10-00686 (RBK/JS)
                                    :
        v.                          :    **OPINION**
                                    :
MCALLISTER TOWING OF                :
PHILADELPHIA, INC.                  :
                                    :
            Defendant.              :
_____ :

**KUGLER**, United States District Judge:

This matter is before the Court on Plaintiff Robert K. Van Blunk's motion for reconsideration of the portion of this Court's Order dated March 12, 2012 in which the Court granted in part the motion of McAllister Towing of Philadelphia, Inc. ("Defendant") for summary judgment on the issue of judicial estoppel. The parties submitted briefs and the Court heard oral argument on this issue on April 24, 2012. As explained below, the Court denies Plaintiff's motion for reconsideration.

**I.  LEGAL STANDARD**[1]

Motions for reconsideration are not expressly recognized in the Federal Rules of Civil Procedure. See United States v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999). Generally, a motion for reconsideration is treated as a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e), or as a motion for relief from judgment or order under

---

[1] The underlying facts in this case have been set forth in the Court's Opinion dated March 12, 2012.

Federal Rule of Civil Procedure 60(b).  See id.  In the District of New Jersey, Local Civil Rule 7.1(i) governs motions for reconsideration.  See Byrne v. Calastro, No. 05-68, 2006 U.S. Dist. LEXIS 64054, at *7 (D.N.J. Aug. 28, 2006).

Local Civil Rule 7.1(i) permits a party to seek reconsideration by the Court of matters which the party "believes the Judge or Magistrate Judge has overlooked" when it ruled on the motion.  See L. Civ. R. 7.1(i).  "The standard for [reconsideration] is high, and reconsideration is to be granted only sparingly."  United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994).  The movant has the burden of demonstrating either:  "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).  "The word 'overlooked' is the operative term in the Rule."  Bowers v. NCAA, 130 F. Supp. 2d 610, 612 (D.N.J. 2001) (citation omitted); Compaction Sys. Corp., 88 F. Supp. 2d at 345.  The Court will grant a motion for reconsideration only where it overlooked a factual or legal issue that may alter the disposition of the matter.  See Compaction Sys. Corp., 88 F. Supp. 2d at 345; see also L. Civ. R. 7.1(i).

Ordinarily, a motion for reconsideration may address only those matters of fact or issues of law that the parties presented to, but were not considered by, the court in the course of making the decision at issue.  See Student Pub. Interest Grp. v. Monsanto Co., 727 F. Supp. 876, 878 (D.N.J.), aff'd, 891 F.2d 283 (3d Cir. 1989).  Thus, reconsideration is not to be used as a means of expanding the record to include matters not originally before the court.  See Bowers, 130 F. Supp. 2d at 613; Resorts Int'l. v. Great Bay Hotel and Casino, Inc., 830 F. Supp. 826, 831 & n.3

(D.N.J. 1992); Egloff v. New Jersey Air Nat'l Guard, 684 F. Supp. 1275, 1279 (D.N.J. 1988). Absent unusual circumstances, a court should reject new evidence that was not presented when the court made the contested decision. See Resorts Int'l, 830 F. Supp. at 831 n.3. A party seeking to introduce new evidence on reconsideration bears the burden of first demonstrating that the evidence was unavailable or unknown at the time of the original decision. See Levinson v. Regal Ware, Inc., No. 89-1298, 1989 U.S. Dist. LEXIS 18373, at *2 (D.N.J. Dec. 1, 1989).

Moreover, L. Civ. R. 7.1(i) does not allow parties to restate arguments that the court has already considered. See G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990). Thus, a difference of opinion with the court's decision should be dealt with through the normal appellate process. See Bowers, 130 F. Supp. 2d at 612 (citations omitted); Florham Park Chevron, Inc. v. Chevron U.S.A., Inc., 680 F. Supp. 159, 162 (D.N.J. 1988); see also Chicosky v. Presbyterian Med. Ctr., 979 F. Supp. 316, 318 (D.N.J. 1997); NL Indus., Inc. v. Commercial Union Ins. Co., 935 F. Supp. 513, 516 (D.N.J. 1996) ("Reconsideration motions . . . may not be used to re-litigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."). In other words, "[a] motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple." Tischio v. Bontex, Inc., 16 F. Supp. 2d 511, 533 (D.N.J. 1998) (citation omitted).

## II. DISCUSSION[2]

Plaintiff's primary argument in moving for reconsideration is that Plaintiff did not himself make the inconsistent statements to the Coast Guard and to Defendant, relying instead on his doctors' professional judgment. Plaintiff also argues that he did not make any statements in bad faith.

---

[2] The standard for applying judicial estoppel is set forth in the Court's March 12, 2012 Opinion.

The central basis for Plaintiff's motion for reconsideration is that the Court's March 12, 2012 Opinion ("the Opinion") relied upon an incorrect copy of the instruction pages of the United States Coast Guard Application for Relicensure.  Defendant concedes that the instruction pages of the Coast Guard form that Plaintiff submitted with his 2008 application for relicensure contained different instructions than the pages considered by the Court in the prior Opinion.[3] The instruction form attached to the application for relicensure, which the parties now agree is the correct version of the instructions, states that "[y]ou may submit this report, <u>completed by your physician</u>."  Pl. Ex. 8 (emphasis added).  Plaintiff argues that in submitting his application for relicensure, he merely certified that his family physician, Dr. Gross, had completed the form on Plaintiff's behalf.

The Court previously noted that the 2008 Coast Guard application required applicants to certify, as Plaintiff did, that "all information provided by me is complete and true to the best of my knowledge."  Pl. Ex. 8.  Furthermore, the application required that Plaintiff's physician complete the following sections:

    I-    Applicant Information

    III-    Vision

    V-    Hearing

    VII-    Certification of Physical Impairment or Medical Conditions

<u>Id.</u>  In sections III and V, Dr. Gross certified that Plaintiff's vision and hearing were "normal." <u>Id.</u>  Section VII required Dr. Gross to provide certified responses to the question, "[d]oes the

---

[3] The parties agree that the version of the instructions that the Court relied on in the prior Opinion was the instructions for the 2004 Coast Guard application.  The Court notes that the 2004 application instruction pages, which Defendant provided in the original motion for summary judgment, were stamped with a Coast Guard seal and contained a signed certification from the Coast Guard attesting that those pages were a true and correct copy of the application.  <u>See</u> Pl. Ex. 3.  The version of the application instructions supplied by Plaintiff, which the parties now agree is the correct version, does not have the Coast Guard's seal or certification.  <u>See</u> Pl. Ex. 8.

applicant have or ever suffered from [sic] any of the following [medical issues]?" Dr. Gross noted that Plaintiff did not currently have, and had never suffered from, the following medical problems: "[i]mpaired range of motion," "[i]mpaired balance/coordination," "[r]ecent or repetitive surgery" and "[o]ther illness or disability not listed." Id. Dr. Gross's responses to these questions on the application form are curious, given the fact that Plaintiff had undergone surgery on his rotator cuff and follow-up treatments since at least four months prior to Plaintiff's visit to Dr. Gross. In fact, Plaintiff had just visited his orthopedic surgeon, Dr. Ciccotti, on October 2, 2008, just four days prior to Plaintiff's visit to Dr. Gross. See Pl. Ex. 5.

      The Court notes that Dr. Gross testified in deposition that he had received from Dr. Ciccotti Plaintiff's records of treatment related to his rotator cuff. Gross Dep. at 30-37. Dr. Gross further stated in deposition that he believed that at the time he was examining Plaintiff, he stated to Plaintiff, "You're physically fit as far as I'm concerned, but you have to be cleared by the orthopedic doctor." Id. at 32. Finally, Dr. Gross testified that Plaintiff stated in response to Dr. Gross's questions during the examination that Plaintiff had "[n]o complaint of any shoulder issues." Id. at 29. The Court further notes that Plaintiff has not submitted any affidavits or made any sworn statements of his own personal knowledge that contradict Dr. Gross's testimony. After being examined by Dr. Gross, Plaintiff submitted the two-page application form to the Coast Guard and certified that all information provided by him was true, despite the fact that Plaintiff necessarily knew that he had previously been treated extensively for his shoulder injury by Dr. Ciccotti. See Pl. Exs. 1-5 (Dr. Ciccotti's progress notes concerning Plaintiff's rotator cuff treatment and prognosis).

The Court finds that Plaintiff's knowledge that he had been treated extensively for his shoulder injury, including surgery for rotator cuff repair within 4 months of his application for relicensure to the Coast Guard, is irreconcilably inconsistent with Plaintiff's adoption under oath of Dr. Gross's certified statement that Plaintiff had never had prior impairment of his range of motion and that Plaintiff had "[n]o recent or repetitive surgery." Pl. Ex. 8. The knowledge of whether one has ever had prior impairment of one's range of shoulder motion, and whether one has had recent shoulder surgery, is knowledge that is common to a layperson unschooled in medicine. Therefore, in this case, notwithstanding the fact that Dr. Gross filled out Plaintiff's application form, it is appropriate for Plaintiff's certification of the statements contained within the application, and Plaintiff's submission of the application to the Coast Guard, to be imputed against Plaintiff for purposes of judicial estoppel.

Defendant next presents undisputed evidence that on several occasions, Plaintiff submitted to Defendant certifications from Dr. Ciccotti noting that Plaintiff was "unfit for duty." Def. Ex. B (containing certified copies of all of Plaintiff's "not fit for duty" ("NFFD") slips). After receiving these certifications, Defendant excused Plaintiff from appearing for work, and Defendant began to pay Plaintiff's disability benefits and medical expenses. Def. Ex. A, Benton Decl. The Court notes that during the entire period in which Plaintiff had been receiving disability benefits, from January to November 2008, Plaintiff continued to provide to Defendant NFFD slips. In particular, Plaintiff submitted to Defendant an NFFD slip dated October 6, 2008,[4] the same date of Plaintiff's application for relicensure to the Coast Guard. Maureen

---

[4] Plaintiff argues that this slip was incorrectly dated October 6, 2012, when the records show that Plaintiff was seen by Dr. Ciccotti on October 2, 2012. The Court finds that it is immaterial for the present purposes whether Plaintiff received two inconsistent certifications, which Plaintiff submitted to both Defendant and the Coast Guard, on the same exact day, or whether the inconsistent certifications were received four days apart. Even if the two inconsistent certifications were issued to Plaintiff four days apart, Plaintiff's submission of an NFFD slip to his

Burns, an executive assistant employed by Defendant, stated under oath that it was Plaintiff's "consistent practice to visit McAllister after his medical appointments with Dr. Ciccotti and directly hand to me Dr. Ciccotti's Not Fit For Duty slips." Burns Decl., at 2. Plaintiff does not dispute this testimony. Thus, Plaintiff was clearly aware on numerous occasions that he was personally submitting to his employer medical records that reported Plaintiff's inability to perform the duties of his position as a tugboat captain. Plaintiff's representation to his employer was irreconcilably inconsistent with his representation to the Coast Guard that Plaintiff was in fact fit for duty to perform the duties of a mariner. Plaintiff does not dispute that the duties of a mariner fully encompass the duties required to be performed by a tugboat captain. Plaintiff has failed to otherwise explain how Plaintiff's fundamentally inconsistent representations could be reconciled by a reasonable jury. Therefore, in the plain interests of justice, and to prevent a fraud from being perpetrated in this Court, Plaintiff must be estopped from claiming any damages after the date that Plaintiff represented under oath to the Coast Guard that Plaintiff was fit for duty as a mariner.

     Plaintiff argues that even if the Court finds that Plaintiff made inconsistent representations to the Coast Guard and to his employer, it would be unfair to apply judicial estoppel in this case, where Plaintiff did not personally input the information in the forms completed by Dr. Gross and Dr. Ciccotti. The Court disagrees with Plaintiff's unduly narrow interpretation of judicial estoppel. In this Court's prior Opinion dated March 12, 2012, this Court explained how other courts within the Third Circuit have applied the doctrine of judicial estoppel in situations indistinguishable from the instant matter. See Opinion, at 10-11 (comparing the instant litigation to the cases of Detz v. Greiner Indus. Inc., 346 F.3d 109 (3rd Cir.

---

employer and Plaintiff's certification to the Coast Guard contained such "irreconcilably inconsistent" statements that judicial estoppel is properly applied in this case.

7

2003) and Palcsesz v. Midland Mutual Life Ins. Co., 87 F. Supp. 2d 409 (D.N.J. 2000)).  Not only has the law of the Third Circuit with respect to judicial estoppel been clear since that time, but a mere two weeks after this Court's prior Opinion, the Third Circuit reaffirmed and further bolstered the rule laid out in Detz v. Greiner.  See Macfarlan v. Ivy Hill SNF, LLC, No. 11-2307, 675 F.3d 266 (3d Cir. 2012).

In Macfarlan, the plaintiff took medical leave under the FMLA and was scheduled to return to work in April 2008.  Macfarlan, No. 11-2307, at 5.  The plaintiff was terminated after he failed to return to work at the time the defendant employer expected him to return.  Id. at 6-7.  The plaintiff then brought suit for violation of the FMLA.  Id. at 7.  The District Court found that the plaintiff was judicially estopped from claiming that he was able "to perform the essential functions of the job without accommodation," an essential element of an FMLA claim, because plaintiff had continued to receive disability benefits from his insurer through August 2008.  Id. at 9-10.  The Third Circuit affirmed, finding that plaintiff's representations to his insurer that he was "unable to perform the material duties of his regular occupation," were entirely inconsistent with the plaintiff's later claims that plaintiff was able to perform those same duties.  Id. at 16.

The Court further notes that, in direct contradiction to Plaintiff's assertions, the Macfarlan Court did not require a showing that the inconsistent statements attributed to the plaintiff were actually made by the plaintiff himself.  In fact, the Macfarlan Court attributed to the plaintiff statements made in supporting medical documentation submitted on the plaintiff's behalf by the plaintiff's physicians.  See id. at 11.  As noted by the Macfarlan Court,

> Plaintiff [Macfarlan] received Short Term Disability Insurance benefits from his Carrier for a period of six (6) months, from February through August, 2008, for the months of January through July, 2008 based on his claims to his Carrier and supporting medical documentation submitted to them on his behalf by his

8

>    physicians <u>that he was unable to perform the material duties of his regular occupation</u>.

<u>Id.</u> (emphasis in original).  Plaintiff would have this Court believe that so long as Plaintiff's physicians, and not Plaintiff, made statements on Plaintiff's behalf, Plaintiff is immune from liability for such statements.  The Court finds that agency principles are not so limited.  To the contrary, where a party certifies his physician's documentation as being true and correct to the best of the party's knowledge, and then proceeds to submit his physician's documentation for the party's own benefit, the party is accountable to this Court for representations contained within the certified statement that the party would clearly understand to be false or inconsistent.  <u>See</u> <u>Macfarlan</u>, at 11, 13.  Applying this principle, the Court finds that the irreconcilably inconsistent statements contained in the certifications that Plaintiff submitted to both his employer and to the Coast Guard are in this case properly attributed to Plaintiff.

   Having attributed these inconsistent statements to Plaintiff, the Court finds that Plaintiff's other option to escape from judicial estoppel in this case would be to "provide an explanation for his inconsistency from which a reasonable juror could conclude that, despite the truth of, or [Plaintiff's] good faith belief in, his statements to [the Coast Guard], he was nevertheless [un]able to perform the material duties of his regular job . . . ."  <u>Macfarlan</u>, at 11.  As described above, Plaintiff has not, and cannot, provide such an explanation for his necessarily irreconcilable positions.  Therefore, judicial estoppel is properly applied in this case.

   Plaintiff next argues that Defendant failed to make a sufficient showing of bad faith with regard to Plaintiff's statements.  As discussed in the Court's prior Opinion, there is ample evidence to infer bad faith on Plaintiff's part.  <u>See</u> Opinion at 9-10.  Plaintiff argues that he received no benefit from receiving a Coast Guard license, since he never took another job as a

mariner after the date that he applied for relicensure. However, the Court notes that Plaintiff did receive a benefit from relicensure in that Plaintiff could have used, and still can use, the license to apply for another position as a merchant mariner. As this Court noted in the prior Opinion, Coast Guard licensure is an important privilege that has great consequences for public safety and welfare. See Opinion at 11 (noting that the Staten Island Ferry crash was due in large part to a captain's medical condition, of which the Coast Guard was unaware). In light of these facts, the Court cannot condone or overlook Plaintiff's inconsistent representations to the Coast Guard as mere "harmless error." Accordingly, the Court finds that Plaintiff acted with bad faith and surprising indifference to the truth of his statements to the Coast Guard.

Plaintiff argues that he justifiably relied on Dr. Gross's statements that Plaintiff was fit to be a mariner because Dr. Ciccotti had been indicating that Plaintiff had been improving. The Court finds this argument unavailing. Dr. Ciccotti's notes stated that "[Plaintiff] understands that it may be upwards of three to six months before he can return to vigorous work." Pl. Ex. 1. The Court notes that despite the fact that Plaintiff had been seen extensively by Dr. Ciccotti regarding his shoulder, Plaintiff chose to be seen by Dr. Gross, rather than Dr. Ciccotti, for examination of fitness to practice as a merchant mariner. Dr. Ciccotti would clearly have had more relevant knowledge of Plaintiff's physical fitness, and Dr. Gross recognized this fact when Dr. Gross urged Plaintiff to be cleared by Dr. Ciccotti for further clearance regarding Plaintiff's shoulder in connection to the application for relicensure. In fact, as noted above, Plaintiff had just been seen by Dr. Ciccotti four days prior to Plaintiff's visit to Dr. Gross. During this visit, Dr. Ciccotti noted that "[Plaintiff] will remain out of work." In light of these facts, the Court

finds that Plaintiff's failure to follow up with Dr. Ciccotti for certification of his fitness to be a mariner is further corroborative of Plaintiff's bad faith.

As discussed in the Court's prior Opinion, "no lesser sanction would adequately remedy the damage done by the litigant's misconduct." Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp., 337 F.3d 314, 319-20 (3d Cir. 2003). Accordingly, the Court affirms the grant of judicial estoppel barring Plaintiff from claiming damages pertaining to any period beyond October 6, 2008, the date that Plaintiff certified to the United States Coast Guard that he had no injuries or limitations that prevented him from serving as a mariner.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for reconsideration is **DENIED**. An appropriate Order shall issue.

Dated:  5/7/12    /s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge